UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

SUMMER L. H.,                                          Case No. 6:21-cv-00665-AR
                          Plaintiff,
                                                       **OPINION AND ORDER**
         v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                          Defendant.

_____

**ARMISTEAD, Magistrate Judge**

In this judicial review of the Commissioner's final decision denying Social Security

benefits, Summer L. H. (her last name omitted for privacy) alleges that the Administrative Law

Judge (ALJ) failed to provide clear and convincing reasons for discounting her subjective

symptom testimony, and erred in finding the opinion of Jessica Webb, PMHNP, unpersuasive.

As explained below, the ALJ's decision is reversed and remanded for further proceedings.[1]

_____

[1]       This court has jurisdiction under 42 U.S.C. § 405(g), and all parties have consented to

## BACKGROUND AND ALJ'S ANALYSIS

Plaintiff applied for a period of disability and Disability Insurance Benefits (DIB) under Title II, alleging disability that began on November 16, 2018. (Tr. 14.) Her claims, which were denied initially and upon reconsideration, were considered by the ALJ at a hearing on September 10, 2020. In denying plaintiff's applications, the ALJ followed the five-step sequential evaluation process.[2] The ALJ found that plaintiff meets the insured status requirements through December 31, 2023, and at step one, that she has not engaged in substantial gainful employment since the alleged onset date. (Tr. 16.) At step two, the ALJ determined that she has the following severe impairments: recurrent brief depression, alcohol use disorder in sustained remission, cannabis use disorder, stimulant use disorder in sustained remission, features of paranoid personality disorder, schizoaffective disorder, and bipolar disorder. (Tr. 16.) At step three, the ALJ found that plaintiff does not have an impairment, or combination of impairments, that meet or medically equal a listed impairment.

As for the ALJ's assessment of plaintiff's RFC, 20 C.F.R. § 404.1545, the ALJ determined that plaintiff can perform work at all exertional levels with the following additional limitations: she can understand, remember, and carry out simple routine repetitive tasks; can make simple work-related decisions; can perform work with few, if any, changes in the

---

jurisdiction by magistrate judge under Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c).

[2]    To determine a claimant's disability, the ALJ must apply a five-step evaluation. *See* 20 C.F.R. § 404.1520(a)(4). If the ALJ finds that a claimant is either disabled or not disabled at any step, the ALJ does not continue to the next step. *Id*.; *see also Parra v. Astrue*, 481 F.3d 742, 746–47 (9th Cir. 2007) (discussing the five-step evaluation in detail).

workplace; can persist at simple, routine, repetitive tasks; she can perform no assembly line pace work; and she can have occasional contact with coworkers, the public, and supervisors. (Tr. 18.) At step four, the ALJ found that plaintiff is unable to perform any past relevant work. (Tr. 23.) At step five, the ALJ determined that given her age, education, work experience, and RFC, plaintiff can perform the representative occupations of garment sorter, cleaner-housekeeping, and hand packager. (Tr. 25.)

The district court must affirm the ALJ's decision if the ALJ applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citation omitted). To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the ALJ's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

## DISCUSSION

### A.    *The ALJ Erred in Evaluating Plaintiff's Subjective Symptom Testimony*

As for the credibility of a claimant's testimony about subjective pain or symptoms, when an ALJ "determines that a claimant for Social Security benefits is not malingering and has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms she alleges, the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015); 20 C.F.R. §

404.1529. The specific, clear and convincing standard is "the most demanding required in Social Security cases" and is "not an easy requirement to meet." *Garrison*, 759 F.3d at 1015; *Trevizo v. Berryhill*, 871 F.3d 664, 678-79 (9th Cir. 2017). The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Brown-Hunter*, 806 F.3d at 493.

Plaintiff alleges that she cannot engage in full-time, competitive employment due to her mental health conditions, including diagnoses of schizoaffective disorder and bipolar disorder. Plaintiff describes experiencing significant symptoms including paranoia, delusions, psychosis, anxiety, and depression. (Tr. 262.) Plaintiff reports struggling with ongoing intrusive thoughts, including that other people are talking about her, are trying to trick her, and can record and observe her through various cameras and recording devices. (Tr. 266.) Plaintiff has a long history of mental health treatment, and has been prescribed various medications for her conditions, including Saphris, Latuda, lorazepam, citalopram, mirtazapine, lamotrigine, perphenazine, quetiapine, guanfacine, fluoxetine, bupropion, aripiprazole, and olanzapine. (Tr. 341, 343, 515, 517-19, 525, 695, 782.) Plaintiff also has a history of hypothyroidism, which may affect her mood, for which she is prescribed levothyroxine. (Tr. 515, 822, 910-11.)

At the hearing, plaintiff testified that she is married and is the primary caretaker of her two small children (then ages 3 and 5), and can cook, clean, shop for groceries, drive, and get to appointments independently. (Tr. 83.) Plaintiff stated that she last worked in November 2018, when she was terminated for too many absences. (Tr. 88, 91.) Plaintiff received unemployment benefits after her termination, and she testified that she continued to look for part-time work when her benefits ended. (Tr. 85-86, 91.) Plaintiff testified that while working she was worried

about what her coworkers were saying about her and believed people were talking about her. (Tr. 91.) Plaintiff testified that she does not like to go out in public because she believes that people are talking about her or spying on her. (Tr. 101-03.) Plaintiff also testified that she smokes marijuana and that it is the best "mood stabilizer" she has ever used, and that it significantly eases her anxiety. (Tr. 104.) Plaintiff has a history of methamphetamine use and testified that she has been clean for five years. (Tr. 104.)

Plaintiff challenges the ALJ's assessment of her subjective symptom testimony.[3] The ALJ discounted her testimony because: (1) her receipt of unemployment benefits contradicted her testimony that she is unable to work; (2) she was terminated for reasons other than her mental health limitations; (3) she has, at times, not been compliant with taking medications; (4) she has not received emergency treatment or been hospitalized for her mental health conditions; (5) her marijuana use may contribute to her paranoia; and (6) the severity of her symptoms is not fully supported by objective medical evidence. As discussed below, the ALJ's reasons are not clear and convincing and are not fully supported by substantial evidence.

### 1. unemployment benefits

Receipt of unemployment benefits may cast doubt on a claimant's claim of disability because it shows that an applicant is holding herself out as capable of working. *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). However, the record must show that plaintiff held herself out as available for full-time work. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161-62 (9th Cir. 2008) ("[W]hile receipt of unemployment benefits can undermine a claimant's alleged inability to work fulltime . . . the record here does not establish whether

---

[3]      There is no evidence of malingering.

Carmickle held himself out as available for full-time or part-time work. Only the former is inconsistent with his disability allegations.").

The ALJ found that plaintiff received "substantial amounts of unemployment benefits, applied for work, and admitted that she sought part-time work after her alleged onset date." (Tr. 23.) Based on this evidence, the ALJ found that plaintiff was capable of working if she were "motivated to do so." (Tr. 23.)

As plaintiff correctly contends, the ALJ erred in discounting her testimony on this basis. Under Oregon law, she is only required to be capable of "some work" to receive unemployment benefits. *Mulanax v. Comm'r Soc. Sec. Admin.*, 293 F. App'x 522, 523 (9th Cir. 2008) (stating that in Oregon, persons are eligible to receive unemployment benefits if she available to perform some work, including temporary and part time work). Here, the record shows that plaintiff sought only part-time work and declined full-time positions, which is consistent with her allegations. (Tr. 85.) Thus, this rationale fails to provide a clear and convincing basis to discount her subjective symptom testimony.

> 2.     *excessive absences due to childcare needs*

The ALJ discounted plaintiff's subjective symptom testimony that she was terminated because of excessive absences due to her paranoia and anxiety, but that "it is not clear if she misses work due to her mental impairments or childcare concerns." (Tr. 22.) Inconsistencies between a claimant's testimony and her previous statements to medical providers may provide a basis for discounting subjective symptom testimony. *Ghanim*, 763 F.3d at 1164.

The Commissioner contends that the ALJ's finding is supported by substantial evidence because plaintiff reported to two health care providers that her absences stemmed from not only

her psychiatric condition but also her children's illnesses. (Def.'s Br. at 4, ECF No. 20 (citing Tr.

21-22, 517, 667).) Plaintiff argues that the ALJ's rationale is not backed by substantial evidence

when the record is viewed as whole. Plaintiff argues that in the months before and after her

termination, her mental health records reveal increased paranoia and delusional thought

processes and that her testimony is consistent with her treatment record. (Pl.'s Br. at 14.)

　　　　The court concludes that the ALJ's reasoning is not supported by substantial evidence.

The record reveals that plaintiff delivered her second child in October 2017, and soon after, her

psychiatric provider, Marie Stoller, M.D., found her paranoia and anxiety to be at baseline. (Tr.

556.) In November 2017, plaintiff reported increased anxiety and paranoia, including that her

thoughts were being repeated on the radio and that people on the television and on social media

know things about her past. (Tr. 550.) She reported increased negative thinking, with a stable

mood. (Tr. 551.) Dr. Stoller noted moderate intermittent paranoia, increased her citalopram

dosage, and urged her to use lorazepam as needed for anxiety. (Tr. 552.) In December 2017,

plaintiff informed Dr. Stoller that she was feeling very bothered by increased paranoid thoughts,

including that television programming and online websites were designed just for her, and she

expressed concern about returning to work because she is unable to escape her thoughts while

working. (Tr. 546.) Plaintiff tried increasing her Saphris dosage, but it caused her to talk in her

sleep. (Tr. 547.) Dr. Stoller prescribed aripiprazole. (Tr. 548.)

　　　　In January 2018, plaintiff returned to work full-time, and reported that her anxiety and

paranoia were much improved. (Tr. 543.) Dr. Stoller noted improved paranoia and inhibition of

return (IOR) and minimal anxiety; there were no medication changes at that visit. (Tr. 545.) In

February 2018, plaintiff reported to Dr. Stoller increased paranoid thoughts with increased stress

due to her husband losing his job. (Tr. 542.) In April 2018, plaintiff again reported to Dr. Stoller experiencing an uptick in her paranoia and stress, and she complained of bothersome thoughts that others were talking about her and judging her, and that her mood was cycling with two days of feeling very happy and two days of feeling very low. (Tr. 535.) Plaintiff also noted that her younger child was hospitalized for two days, increasing her stress. (Tr. 535.) Dr. Stoller observed increased paranoia, IOR, and mood fluctuations, and prescribed lamotrigine. (Tr. 536-37.) In June 2018, plaintiff reported that she felt at baseline, that medications were making going to work and the grocery store "tolerable," and that ongoing delusions about what her coworkers say, and that spyware on her radio, phone, and television make life very hard. (Tr. 531.) Plaintiff expressed worry that she would lose her job for taking time off for her kids and for herself, and that she was considering a medical leave. (Tr. 533.) Dr. Stoller increased her lamotrigine and citalopram dosages. (Tr. 533.)

By the end of July 2018, plaintiff informed Dr. Stoller that her paranoia was worse, with increased worry about her job performance due to her anxiety and paranoia, and that she had an anxiety attack at work. (Tr. 527.) Plaintiff reported financial stressors, feeling overwhelmed, difficulty sleeping, and depression with passive suicidal ideation. (Tr. 527.) Dr. Stoller indicated worsening paranoia, IOR with stress, and prescribed Latuda and perphenazine because plaintiff was unable to tolerate higher doses of Saphris. (Tr. 529.) In October 2018, plaintiff was mildly improved, but "very bothered by intrusive anxious thoughts, IOR, feeling that others can read her thoughts" and that she was having difficulty at work and with listening to the television. (Tr. 520.) Dr. Stoller noted her paranoia and IOR were mild, her mood was stable and that her "[o]ngoing paranoia was causing distress but [she was] functioning well." (Tr. 521.) In

November 2018, plaintiff reported to Dr. Stoller that she was fired for "too many absences" (Tr. 516.) Plaintiff was overwhelmed and worried about losing health insurance. (Tr. 516.) Plaintiff had ongoing thoughts of audio and visual recordings being made of her. (Tr. 516.) Plaintiff noted that her children were sick often, which was stressful, yet she was enjoying them immensely. (Tr. 516.) Dr. Stoller's treatment note reflects that plaintiff was "recently fired for absences related to schizophrenia and children's illnesses," that she was managing stress "okay," and that she had ongoing paranoia and IOR. (Tr. 517.) Dr. Stoller prescribed Saphris at plaintiff's request for efficacy and swapped out citalopram for fluoxetine. (Tr. 517.)

At a November 2019 psychological assessment with Paula M. Belcher, Ph.D., plaintiff reported losing her job due to excessive absences. (Tr. 665.) Dr. Belcher observed that plaintiff was anxious about her own health and her children's health, and that plaintiff stated that she cannot work because her employers cannot provide accommodations that limit her from overhearing coworkers' conversations. (Tr. 667.) Dr. Belcher further noted that plaintiff was fired from her prior job due to absences, "but it is unclear if she missed work because of paranoid thoughts or because of illness." (Tr. 667.)

A longitudinal view of the record shows waxing and waning symptoms of paranoia and anxiety in the months before her termination in November 2018, and that plaintiff was concerned about being fired as her paranoia increased. The record reveals that during this time, Dr. Stoller was frequently changing her mental-health medications to find a combination that would provide better and more sustained relief. Although Dr. Stoller's treatment notes reflect that plaintiff missed work occasionally for her children's illness, they also clearly provide that plaintiff missed work due to her own symptoms of anxiety and paranoia, undermining the ALJ's finding on this

point. And, contrary to the Commissioner's contention, Dr. Belcher's psychological assessment does not support a reasonable inference that plaintiff was fired due to childcare concerns as found by the ALJ. Instead, Dr. Belcher's assessment states that it is unclear if she misses work due to paranoia or illness. (Tr. 667.) All the same, even if plaintiff occasionally missed work to care for her sick children, this in no way contradicts her testimony that she also missed work due to her own mental health issues, including increased paranoia, IOR, anxiety, and stress. Therefore, the ALJ's finding that plaintiff missed work due to childcare concerns is not supported by substantial evidence and this rationale fails to provide a clear and convincing basis to discount her testimony. *See Trevizo*, 871 F.3d at 681-82 (concluding that claimant's report that she stopped working due to physical impairment was not inconsistent with her report to a doctor that she quit her job).

### 3.    medication noncompliance

The ALJ found that plaintiff has a long history of mental health treatment, but that "she is hesitant to take mental health medications citing side effects and she has a history of noncompliance despite admitting to some benefit over time" citing records from October 2019 and January 2020. (Tr. 22, 822-23, 846.) An ALJ may rely on a claimant's failure to follow a prescribed course of treatment to discount testimony about the intensity or persistence of symptoms. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). But when a claimant offers an adequate explanation for the noncompliance, such noncompliance is excusable and fails to supply a clear and convincing reason to discredit testimony. *Jill C. v. Berryhill*, Case No. 3:17-cv-1892-SI, 2018 WL 6308728, at *4 (D. Or. Dec. 3, 2018); *Gamble v. Chater*, 68 F.3d 319, 320-21 (9th Cir. 1995) (noting inability to afford treatment excuses noncompliance with

treatment). And the Ninth Circuit "disfavors faulting a claimant for failing to comply with treatment when a mental impairment causes the non-compliance." *Jill C.*, 2018 WL 6308728, at *4 (citing *Regennitter v. Comm. Soc. Sec. Admin.*, 166 F.3d 1294, 1299-1300 (9th Cir. 1999) ("[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.")).

Plaintiff challenges the ALJ's finding that she has been noncompliant with taking prescribed medications, contending that the record shows various side effects, efficacy, and financial barriers to certain medications. (Pl.'s Br. at 14.) Plaintiff also argues that her hearing testimony that psychotropic medications "helped a lot," and that she was taking only propranolol for anxiety does not undermine her allegations of disabling paranoia and anxiety. (Tr. 92-95.) The Commissioner argues that plaintiff discontinued lamotrigine against the advice of her physician, and that the ALJ appropriately discounted her subjective symptom testimony based on her noncompliance with various prescribed medications.

The ALJ's finding is not supported by substantial evidence when the treatment record is viewed as a whole. In October 2019, plaintiff was treated by Jennifer Mitchell, M.D., for her hypertension and bipolar disorder. (Tr. 822.) Plaintiff informed Dr. Mitchell that she had recently moved to the area and that she has a history of bipolar disorder that was managed previously by a prescribing psychiatrist. (Tr. 822.) Plaintiff also explained to Dr. Mitchell that she was then taking only Lamictal, and previously had been prescribed several medications. (Tr. 822.) Dr. Mitchell observed that plaintiff's mood was depressed and anxious, and they discussed the importance of plaintiff establishing care with a new psychiatrist for medication management and obtaining a therapist. (Tr. 823.) Dr. Mitchell also refilled her prescription for Lamictal. (Tr. 824.)

In January 2020, plaintiff was seen by Shawn M. Jones, F.N.P., who worked in Dr. Mitchell's office. (Tr. 846.) Plaintiff informed Nurse Jones that she stopped taking Lamitcal due to a concern about Lamictal (name brand) versus lamotrigine (generic), and that previously she had taken several different variations of that drug and that some caused constipation. (Tr. 843.) Plaintiff also explained that she had an appointment to see a therapist and psychiatrist later that month. (Tr. 843.) Although Nurse Jones expressed concern about plaintiff stopping taking her lamotrigine, he noted the upcoming appointment for psychiatric medications, and "will defer to them to assist [plaintiff] in proper medication usage." (Tr. 846.)

Additionally, the record documents numerous side effects from and financial barriers to certain medications, including being unable to afford Saphris, excessive weight gain from Seroquel, excessive weight gain and sexual dysfunction from Latuda (Tr. 638, 782), and excessive sleepiness and increased appetite from guanfacine (Tr. 695, 710). And plaintiff's experience with lamotrigine was mixed, with her doctors occasionally discontinuing it due to lack of efficacy. (Tr. 529.) As noted above, plaintiff's doctors frequently changed her medications attempting to provide more sustained relief. Plaintiff testified at the hearing that despite being prescribed a variety of psychotropic medications, her paranoia "never really completely went away" and that the medication that was most helpful "was the stuff that made me sleep too much." (Tr. 95.)

When read in context, the record shows that plaintiff was unable to afford certain medications, she experienced negative side effects, she was between prescribing providers, and the efficacy of the prescribed psychotropic medications was questionable. Thus, the court concludes that the ALJ's rationale is not supported by substantial evidence. *See Elijah L. S. v.*

*Comm'r Soc. Sec. Admin.*, 3:20-cv-01089-AR, 2022 WL 17845933, at *4 (D. Or. Dec. 22, 2022) (concluding ALJ erred in discounting claimant's subjective symptom testimony for instances of noncompliance with prescribed psychotropic medications where the record showed intolerable side effects, financial burdens, treatments not covered by insurance, and that noncompliance was a facet of his bipolar disorder). Accordingly, this reason fails to provide a clear and convincing reason to discount plaintiff's subjective symptom testimony.

       *4.      lack of psychiatric hospitalization*

The ALJ discounted plaintiff's testimony because she "has not been treated for acute psychiatric symptoms requiring emergency treatment or hospitalization." (Tr. 23.) This rationale fails to provide a clear and convincing reason to discount plaintiff's testimony.[4] It is well-settled that a claimant need not "undergo inpatient hospitalization to be disabled." *Gia M. P.*, Case No. 6:17-cv-01825-MA, 2018 WL 4031606, at *6 (D. Or. Aug. 23, 2018); *Elijah L.S.*, 2022 WL 17845933, at *4 (D. Or. Dec. 22, 2022) ("[T]he lack of inpatient hospitalization is not evidence of conservative treatment in the context of complex mental health disorders.") (collecting cases). "A claimant may suffer from mental health impairments that prevent him from working but do not require psychiatric hospitalization." *Morales v. Berryhill*, 239 F. Supp. 3d 1211, 1216 (E.D. Cal. 2017). The lack of inpatient treatment or hospitalization in the context of complex mental health disorders does not contradict a claimant's testimony about the severity of his or her mental health symptoms. *Tammy O. v. Comm'r Soc. Sec. Admin.*, Case No. 3:17-cv-774-SI, 2018 WL 3090196, at *8 (D. Or. June 20, 2018) (finding lack of inpatient hospitalizations did not

---

[4]      The Commissioner does not attempt to defend this rationale.

contradict claimant's testimony about severity of mental health symptoms). The ALJ erred in relying on this basis to discount plaintiff's subjective symptom testimony.

          *5.     marijuana use*

The ALJ discounted plaintiff's testimony about the severity of her symptoms based on her marijuana use because it may contribute to her symptoms. (Tr. 22-23.) The ALJ did not cite to any treatment records advising plaintiff to abstain from using marijuana. As discussed below, the ALJ's finding that Nurse Webb stated that plaintiff's marijuana use contributes to her paranoia and anxiety is not supported by substantial evidence. (Tr. 23, 910-11, 922.) Given the absence of substantial evidence identified by the ALJ, the court finds that plaintiff's marijuana use is not a clear and convincing reason to discount her testimony on this record. *Overman v. Colvin*, Case No. 6:14-cv-01659-BR, 2016 WL 70463, at *6 (D. Or. Jan. 6, 2016) (stating claimant's cannabis use was not clear or convincing reason to discount testimony).

          *6.     objective medical evidence*

The ALJ discounted plaintiff's subjective symptom testimony because "the record does not support disabling symptoms." (Tr. 22.) Inconsistency with medical evidence may provide a clear and convincing reasons to discount a claimant's testimony, so long as it is not the only reason. *Trevizo*, 871 F.3d at 679. Because the ALJ has failed to provide other clear and convincing reasons sufficient to discount plaintiff's subjective symptom testimony about her limitations, a lack of objective medical evidence cannot supply the sole basis for discounting her testimony. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Because the ALJ has failed to provide another clear and convincing reason backed by substantial evidence, the ALJ may not rely on a lack of objective medical evidence to discount plaintiff's testimony.

The Commissioner contends that the ALJ appropriately discounted plaintiff's testimony about disabling paranoia and anxiety because she successfully maintained employment for multiple years, reported to various providers that her paranoia and anxiety are caused by situational stressors, and that her allegations are inconsistent with her activities of daily living (including caring for her two young children). (Def.'s Br. at 4-6, ECF No. 20.) The court disagrees. These statements by the ALJ are included in the discussion of Dr. Belcher's psychodiagnostic evaluation, but the ALJ did not rely on these reasons when discounting plaintiff's testimony. Tr. 21. The court "may review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Trevizo*, 871 F.3d at 675 (citing *Garrison*, 759 F.3d at 1010); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (holding the court is "constrained to review the reasons the ALJ asserts"). Accordingly, the Commissioner's supplied *post hoc* rationales are rejected.

In summary, the ALJ has failed to provide specific, clear and convincing reasons backed by substantial evidence to discount plaintiff's subjective symptom testimony and the ALJ has erred.

**B.    *The ALJ Erred in Finding Nurse Webb's Opinion Unpersuasive***

For disability claims filed on or after March 27, 2017, new regulations for evaluating medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844, at *5867-68 (Jan 18, 2017). Under the new regulations, the ALJ "no longer give[s] any specific evidentiary weight," let alone controlling weight, "to any medical opinion." *See Allen O. v. Comm'r Soc. Sec.*, No. 3:19-cv-02080-BR, 2020 WL 6505308, at *5 (D. Or. Nov. 5, 2020) (simplified), *aff'd*,

2021 WL 5906142 (9th Cir. 2021); *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022)

("The revised social security regulations are clearly irreconcilable with our caselaw according

special deference to the opinions of treating and examining physicians on account of their

relationship with the claimant."). Instead, "the ALJ considers all medical opinions and evaluates

their persuasiveness based on supportability, consistency, relationship with the claimant,

specialization, and 'other factors.'" *Robert S. v. Saul*, No. 3:19-cv-01773-SB, 2021 WL 1214518,

at *3 (D. Or. Mar. 3, 2021) (simplified); 20 C.F.R. § 404.1520c(c). The regulations require ALJs

to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they]

considered the supportability and consistency factors." 20 C.F.R. § 404.1520c(c). Supportability

is determined by whether the medical source presents explanations and objective medical

evidence to support their opinions. *Id.* § 404.1520c(c)(1). Consistency is determined by how

consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* §

404.1520c(c)(2).

An ALJ may but is not required to explain how other factors were considered, including

length, purpose, or extent of the treatment relationship, the frequency of the claimant's

examinations, and whether there is an examining relationship. *Id.* § 404.1520c(c)(3); *Robert S.*,

2021 WL 1214518, at *3. The court must, moreover, continue to consider whether the ALJ's

analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *Woods*, 32 F.4th at 792

("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's

opinion as unsupported or inconsistent without providing an explanation supported by substantial

evidence.").[5]  *Id.*

Plaintiff argues that the ALJ erred in articulating how she considered the supportability and consistency factors when finding Nurse Webb's opinion unpersuasive. Nurse Webb provided a letter dated August 10, 2020, in which she stated that she provided medication management for plaintiff's mental health conditions beginning in January 2020 and met with plaintiff every four to six weeks. (Tr. 922.) Nurse Webb described that plaintiff's symptoms are anxiety, panic, and referential paranoid delusions. (Tr. 922.) Nurse Webb opined that plaintiff's anxiety and paranoid delusions "greatly interfere" with her ability to be in the public and perform full-time work and that plaintiff would "call out [sick] at least on a weekly basis." (Tr. 922.) Nurse Webb also opined that plaintiff may need to "excuse herself from her job on a daily basis if her anxiety was high or if she exhibits panic symptoms[.]" (Tr. 922.) Finally, Nurse Webb stated that she is aware that plaintiff self-medicates with marijuana, but "the amount and frequency is not clear." (Tr. 922.)

The ALJ found Nurse Webb's opinion unpersuasive because her treating relationship was "very short," she questioned plaintiff's diagnosis in her own treatment notes, plaintiff does not take mental health medications, and plaintiff uses marijuana that "she noted could contribute to [plaintiff's] paranoia." (Tr. 23, citing 910, 922.)

In plaintiff's view, the ALJ inadequately analyzes the supportability and consistency factors and is not supported by substantial evidence. The Commissioner responds that the ALJ

---

[5]     Under the new framework, the ALJ is no longer required to "provide specific and legitimate reasons for rejecting an examining doctor's opinion;" rather, the ALJ's reasons must "simply be supported by substantial evidence." *Woods*, 32 F.4th at 787.

reasoned that Nurse Webb's opinion was inconsistent with the treatment record, including plaintiff's failure to take mental health medications, other than propranolol for anxiety. (Def.'s Br. at 9.) The Commissioner also argues that the ALJ reasonably determined that Nurse Webb's opinion was not supported because she questioned the accuracy of a schizoaffective disorder diagnosis.

The court concludes that the ALJ has failed to sufficiently articulate how the consistency and supportability factors were considered. Although the ALJ accurately stated that Nurse Webb questioned plaintiff's schizoaffective disorder diagnosis, Nurse Webb's treatment notes reflect that plaintiff "clearly exhibits symptoms of a mood disorder characterized by episodes of depression, hypomania and mania and persistent paranoid referential delusions or parataxic distortions" and she stated that plaintiff may meet the criteria for paranoid personality disorder. (Tr. 749.) When discussing Nurse Webb's treatment notes, the ALJ observed that the mental status exams performed by Nurse Webb were normal "except for expression of paranoid thoughts." (Tr. 22, citing 686, 700, 715, 731, 747-52, 754-61, 769-772.) In fact, the treatment records cited by the ALJ consistently reflect that plaintiff displayed paranoid thoughts, which is consistent with Nurse Webb's opinion. The ALJ's contrary conclusion is not supported by substantial evidence and fails to supply a reasoned explanation of how the relevant factors were considered. *Woods*, 32 F.4th at 792 (holding that an ALJ can "reject an examining or treating doctor's opinion as unsupported or inconsistent" if the ALJ "provide[es] an explanation supported by substantial evidence").

Additionally, the ALJ's other rationales for finding Nurse Webb's opinion unpersuasive are not supported by substantial evidence. Contrary to the ALJ's finding that plaintiff does not

take any mental health medications, Nurse Webb prescribed guanfacine and propranolol for

anxiety and focus, and Nurse Webb discontinued the guanfacine due to intolerable side effects.

(Tr. 675, 688.) Moreover, the record does not reflect that Nurse Webb prescribed any other

psychotropic medications that plaintiff refused to take. (Tr. 94 (testifying that it was unclear if

Nurse Webb recommended additional medications).) And inconsistent with the ALJ's finding,

Nurse Webb did not state that plaintiff's marijuana use was contributing to her paranoia. (Tr. 23.)

Instead, Nurse Webb observed that plaintiff's thyroid imbalance "could be a significant medical

contributor to her psychiatric symptoms," noting that her TSH and T4 labs demonstrate

"significant variability." (Tr. 910-11.) And, although Nurse Webb treated plaintiff for only eight

months before providing the letter opinion, consistency and supportability are the "most

important factors." 20 C.F.R. § 404.1520c(b)(2). Given the ALJ's other errors in evaluating the

record, the court determines that their short treatment relationship alone fails to provide an

adequate basis for finding Nurse Webb's opinion unpersuasive.

For all these reasons, the court concludes that the ALJ committed harmful error in

evaluating Nurse Webb's opinion.

## C.    *Remand*

The decision whether to remand for further proceedings or for the immediate payment of

benefits lies within the discretion of the court. *Treichler*, 775 F.3d at 1101-02. A remand for

award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient

reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding

issues that must be resolved, and further administrative proceedings would not be useful; and (3)

after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest

uncertainty" concerning disability. *Id.* at 1100-01 (internal quotation marks and citations omitted); *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy). Even when the credit-as-true standard is met, the district court retains the "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Garrison*, 759 F.3d at 1021.

Plaintiff argues that when her testimony and Nurse Webb's opinions are credited, she is disabled. In plaintiff's view, further proceedings are unnecessary because if she misses work more than one day per month due to her symptoms of paranoia and anxiety, vocational expert testimony establishes that she is unable to sustain competitive employment. The Commissioner argues that there are conflicts in plaintiff's testimony and the medical evidence that require resolution and that further proceedings would be useful here.

Remanding for further proceedings is the proper course here. The court concludes that the ALJ's evaluation of Nurse Webb's opinion and of plaintiff's subjective symptom testimony is not supported by substantial evidence, viewing the entire record. The court also finds that the record contains conflicts and ambiguities, including conflicting medical evidence that was not challenged by plaintiff, including the ALJ's evaluation of Dr. Belcher's opinion. Although there is evidence of plaintiff's sustained paranoia, delusions, and anxiety, the ALJ's evaluation of that testimony was deficient. Therefore, remanding for further proceedings would serve a useful purpose. On remand, the ALJ must: (1) conduct a *de novo* review of the medical opinion evidence, including that of Nurse Webb and Dr. Belcher, and any other medical evidence plaintiff may choose to submit in support of her application; (2) reassess plaintiff's subjective

symptom testimony *de novo* and accept the limitations described therein or provide specific,

clear and convincing reasons for their rejection; and (3) conduct any further necessary

proceedings to complete the record, including offering a new hearing with vocational expert

testimony and making step-five findings if required, and issue a new decision. *Treichler v.*

*Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1107.

## CONCLUSION

For those reasons, the court REVERSES the Commissioner's final decision and

REMANDS this case under 42 U.S.C. § 405(g) sentence four for further administrative

proceedings described above.

DATED: March 8, 2023.

_____
JEFFREY ARMISTEAD
United States Magistrate Judge